FILED

17 SEP 11 PM 12:13

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: pjm          DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>JEREMIAH EZEKIEL, a/k/a ROBERTO BARAJAS-CUEVAS,<br><br>　　　　　　　　　Defendant. | Case No.: 3:17-CR-01195-L<br><br>**ORDER DENYING DEFENDANT'S REQUEST FOR WAIVER OF COUNSEL, AND FOR SELF-REPRESENTATION** |

Presently before this Court is a verbal request by defendant Jeremiah Ezekiel, a/k/a Roberto Barajas-Cuevas ("Defendant"), to waive his right to counsel and represent himself. Having reviewed both party's supplemental briefing, the governing law, and the record as a whole, the Court finds that defendant does not possess the requisite mental capacity to represent himself in this criminal case. Furthermore, upon defendant's own admissions to the Ninth Circuit Court of Appeals, defendant's erratic and bizarre behavior further evidences his inability to conduct his own defense in a criminal proceeding. Accordingly, for the reasons set forth in greater detail, *infra*, defendant's request for self-representation and waiver of counsel is **DENIED**.

///

///

1

## I. Factual Background

On May 1, 2017, the Complaint for this case was filed and the defendant made his initial appearance. At this hearing, this Court appointed Federal Defenders to represent the defendant over his objection. On May 10, 2017, a grand jury in the Southern District of California charged defendant with Attempted Reentry of Removed Alien, in violation of Title 8 U.S.C. § 1326(a) and (b). On May 11, 2017 the defendant entered a plea of not guilty before this Court, and on that date, agreed to the appointment of counsel to represent him. On June 1, 2017, upon request of defense counsel, this Court held a hearing to determine whether defendant knowingly and intelligently waived his right to counsel, pursuant to *Faretta v. California,* 422 U.S. 806 (1975).

In response to this Court's request on June 1, 2017, the United States filed supplemental briefing on June 19, 2017 regarding the application of *Faretta*. [Doc. No. 20]. On June 27, 2017, the defendant, through counsel, filed a Memorandum of Points and Authorities in Support of his Motion to Waive his Sixth Amendment Right to Counsel. [Doc. No. 21].

On August 25, 2017, the Court entered an Order for Examination under 18 U.S.C. § 4241 to Determine Present Mental Competency. [Doc. No. 35]. Therein, the Court referenced, *inter alia*, the defendant's display of irrational behavior at prior appearances by providing nonsensical and/or evasive responses to questions posed by the Court, his uncooperative nature at all court appearances, and his prior competency evaluations in the unrelated criminal proceeding against him.

Pursuant to the Order for Examination, the Federal Bureau of Prisons ("BOP") endeavored to conduct a psychological evaluation of the defendant on August 30, 2017. [Doc. No. 38]. The defendant was asked to complete a Psychology Services Intake Questionnaire on that date, which is a routine procedure for all incoming inmates across the BOP. He refused to complete or sign the questionnaire, but instead wrote on the form "Refuse for Cause." Thereafter, on August 31, 2017, the defendant refused to provide any information necessary to complete the court-ordered evaluation. He also refused to answer

2

any questions posed to him, and instead stated that he would "not discuss anything" with Alicia Gilbert, Ph.D, the BOP Forensic and Clinical Psychologist conducting the evaluation.[1] *Id.*

## II. *Legal Standard*

The Constitution provides that a criminal defendant has the right to the assistance of counsel for his defense. *U.S. Const., Amend. VI.* This right necessarily implies the constitutional right to dispense with counsel and represent oneself. *Faretta v. California*, 422 U.S. at 814-15, 821 (1975). This right, however, is not absolute. *See Indiana v. Edwards*, 554 U.S. 164, 171 (2008) (internal citations omitted). "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834, n. 46. As such, it is proper for this Court to consider mental capability in determining whether a defendant can represent himself. *See Edwards*, 554 U.S. at 171 (internal citations omitted).

By "mental capability," this Court is not referring to the competency to stand trial under 18 U.S.C. § 4241(a).[2] *Cf. Dusky v. United States*, 362 U.S. 402 (setting forth the Constitution's "mental competence" standard for standing trial as whether defendant understands the proceedings against him and can sufficiently consult with his lawyer). Nor is it referring to the competency to plead guilty. *Cf. Godinez v. Moran*, 509 U.S. 389 (1993) (holding that the competency standard for pleading guilty is the same as the competency

---

[1] In fact, as set forth in the September 1, 2017 letter to this Court, it is reported that the defendant "claimed to be unaware that he would be required to undergo a psychological evaluation," despite the fact that this was ordered in open court on August 22, 2017, while the defendant was present. [Doc. No. 30].

[2] Title 18 of the United States Code, § 4241 gives the Court discretion to order a hearing to determine the mental competency of a defendant: "The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

3

standard for standing trial). Rather, having been previously determined to be competent pursuant to 18 U.S.C. § 4241, the question in the present case is whether defendant is capable of conducting his own defense at trial. Thus, *Edwards* is controlling. *See Edwards*, 554 U.S. at 173 (differentiating between a "defendant's ability to proceed on his own to enter a guilty plea . . . and the defendant's ability to conduct trial proceedings").

In *Edwards*, the Supreme Court recognized for the first time that "in certain instances an individual may well be able to satisfy *Dusky's* mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel."[3] *Edwards*, 554 U.S. at 175-76. The Supreme Court permitted a higher mental competency standard that allows judges to take "realistic account of the particular defendant's mental capacities" to determine whether a defendant is competent to conduct trial proceedings on their own. *Id.* at 177-78. Accordingly, this Court has the discretion to determine competency, better described as "capability," and even the discretion to "terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834, n. 46.

### III. Analysis

Given the complexities of mounting a legal defense in a criminal proceeding, *Edwards* permits judges to consider a defendant's "technical legal knowledge," as well as potential mental limitations, such as "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, [and] anxiety" in determining whether a defendant has the capacity to represent himself. 554 U.S. at 173, 176. As applied herein, defendant stated during the *Faretta* hearing in this case that he had "basically [no]" education, did not attend elementary school or high school, and does not have a GED

---

[3] These "basic tasks" include organization of defense, making motions, arguing points of law, participating in *voir dire*, questioning witnesses, and addressing the court and jury. *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984).

4

degree. [Doc. No. 19, *Faretta* Hearing Tr., at pp. 11-12, June 1, 2017.] He lacks a law degree and stated that "[he] is not familiar with the complete Federal Rules of Criminal Procedures," and has checked only "20 pages." *Id.* at 15. He was confused as to which rules applied in a criminal proceeding, stating that he is more familiar with the "civil procedures." *Id.* at 16.

Additionally, defendant displayed a lack of legal knowledge with regard to the maximum penalties he faces if convicted of the charges filed against him in this case. *Id.* at 20-22. He stated that "the complaint doesn't say that I'm going to spend 20 years in that – based on that complaint. Second, there are no crimes against the United States, and that's why I wanted to hear the sort of jurisdiction that this -- this Court is going to proceed on." *Id.* at 21. In response to being asked if he understood the penalty, he said, "No, I don't understand that." The Court then asked what he did not understand, and he said, "I don't understand nothing related to that because the statute is unconstitutional . . . ."[4] *Id.* at 22.

The defendant also challenged the jurisdiction of the Court on several occasions. *Id.* at 18. He asserted that the charging statute was unconstitutional, and that "the person who filed the complaint is not the injured party." *Id.* at 22. The appointment of counsel to him, he contended, constituted a "trespass." *Id.* at 24, 30, 34. He further stated that federal courts such as this Court have admiralty and maritime jurisdiction, but not criminal jurisdiction, and when advised that this conclusion was incorrect, he stated that Congress had exceeded its powers, citing *Erie Railroad v. Tomkins*. *Id.*at 36.

At the June 1, 2017 *Faretta* hearing, this Court endeavored to elicit information from the defendant to determine his ability to represent himself going forward, and to explain to

---

[4] Defendant also argued that statutes are not constitutional, so the penalty would not apply because it is not constitutional. He seemed further confused when he stated that the charges against him were "fictitious, unconstitutional charges because the person who filed the complaint is not the injured party." [Doc. No. 19, *Faretta* Hearing Tr., at p. 22].

5

the defendant why representation by counsel was preferable. The following exchange is illustrative of the defendant's apparent inability to mount an effective defense:

> [COURT] ...[P]art of the reason I'm asking you these questions is that I want to have an understanding and I want you to have an understanding of what you're up against if this case goes to trial because it's going to be a challenge for someone who doesn't have any legal background to be able to represent themselves effectively in a court of law.
>
> And so I'm going to continue asking you some questions so I can gain a better understanding and also so that you can as well to see what you're up against if this case proceeds, and then I'll make a decision or ask for additional briefing from...the lawyers because my concern is that I want to make sure that as this case proceeds that you're effectively represented, that defense arguments which can be advanced to protect your liberty are being advanced either by a lawyer or by yourself.
>
> But you have the right to make sure those arguments are advanced, and if you give up the right to a lawyer, I need to make sure that you have the ability to effectively represent yourself. I want to know that you can do that, so let me go through and ask you a few more questions.... And I need you to answer them honestly and truthfully.
>
> ... Do you understand that an experienced and trained lawyer will understand the complexities of jury selection, opening statements, direct and cross-examination, closing arguments, jury instructions, sentencing, preparation of a presentence report, post-trial motions, factual and legal defenses, the Federal Rules of Evidence, criminal procedure, the statues and case law, local rules, sentencing guidelines, the best ways of establishing a record on appeal, including making necessary objections during the course of this case and other relevant proceedings?
>
> Do you understand that?
>
> [DEFENDANT] [N]o ma'am, I don't."

[Doc. No. 19, *Faretta* Hearing Tr., p. 22, l. 21 - p. 24, l. 3].

In addition to exhibiting a clear lack of technical legal knowledge, the defendant's behavior during the *Faretta* hearing was irrational and disorganized. Throughout the hearing he was disruptive, disjointed, evasive, and vague in his responses to direct

6

questions. While a prior psychological evaluation concluded that defendant did not suffer "from signs or symptoms of a major mental disorder," his erratic behavior in this case could be the result of disorganized thinking and deficits in sustaining attention and concentration.[5]

Most persuasive, however, is defendant's own admission to the Ninth Circuit Court of Appeals that he does not have the mental capacity to represent himself under *Edwards's* heightened standard for self-representation. By way of background, the defendant was previously convicted in 2011 for the same charge in the United States District Court, Central District of California. *United States v. Roberto Barajas-Cuevas, aka Roberto Barajas, aka Roberto Charparro*, Case No. CR10-1032. In that action, the defendant requested and was granted permission to proceed to represent himself, following the issuance of an Order on November 9, 2010 compelling a mental competency examination. The examination was conducted on March 7 and 10, 2011, after which reports were issued by the Federal Bureau of Prisons concluding that while the defendant did not have an underlying emotional or cognitive impairment, his inability and/or unwillingness to cooperate appeared to be volitional in nature and not the product of a genuine mental illness. [Doc. No. 33, Order Granting Filing of Supplemental Exhibits dated March 7, 2011, Report, page. 8]. In apparent reliance on these reports, the District Court granted the defendants request to waive his right to counsel and represent himself going forward. The defendant did so, pled guilty on the first day of trial, and thereafter appealed to the Ninth Circuit.

---

[5] For example, his thoughts were disorganized and contradictory when asked simply if he wanted to represent himself. At the outset of the hearing, defendant stated, "I am not going to represent myself. My appearance is by special appearance here *in propria persona* or *pro per* and not by *pro se*." [*Faretta* Hearing Tr., at p. 6]. He instead asked the Court to appoint him a paralegal to assist him. After being advised that "we don't appoint paralegals" and again reminded of his Sixth Amendment right to counsel, the defendant stated, "I am not okay representing myself." *Id.* at 10. After being pressed by the Court, he stated: "I'd rather take care of my business, no attorneys." *Id.* When asked to confirm that he wants to represent himself, he then stated: "No attorneys" and "you've given me no choice." *Id.*

7

In his appeal, the defendant asserted that the District Court committed reversible error when it determined that he was competent to stand trial and represent himself, and that his sentence should be vacated. The defendant asserted on appeal, this time through counsel, that his behavior "raised serious concerns about his competence." [Appellant's Opening Brief for the Ninth Circuit ("Opng. Brief"), at p. 20, Dec. 23, 2011]. He admitted that an "enormous amount of evidence" showed that he was not competent to stand trial. As represented, "[A]t each court hearing, defendant would launch into rambling and confusing statements about the court's purported lack of jurisdiction and/or make incomprehensible references to commercial and admiralty law." *Id.* at 21-22. As further alleged, his own "very odd behavior" was cause to "question his competence." *Id.* at 21.

On appeal, the defendant also admitted that his persistence in raising his "untenable defense" should have further alerted the District Court to his incompetence to stand trial. As argued:

> Here, on the other hand, Mr. Barajas-Cuevas adamantly refused legal counsel, was often uncooperative, and consistently, over an extended period of time - indeed, throughout the pendency of the case - made bizarre statements and persisted in asserting a legally incomprehensible and untenable 'defense.' [Opng. Brief, at 4-19.] Unlike the defendants in *Gastelum-Almeida*, *Timbana* and *Hernandez*, Mr. Barajas-Cuevas' bizarre conduct was neither short-lived nor isolated, but dominated the course of the proceedings. In these circumstances, the district court erred in finding defendant competent to stand trial.

[Appellant's Reply Brief for the Ninth Circuit ("Reply"), at p. *3, Feb. 23, 2012].

The Ninth Circuit rejected the defendant's arguments, upheld his guilty plea, and found that the District Court did not err in granting the defendant's request to represent himself before the trial court. *United States v. Barajas-Cuevas*, 492 F. App'x 745, 747 (9th Cir. 2012).

Similarly, in the present case, the defendant has exhibited some of the same erratic behavior that he, through counsel, described as a basis for judicial error to the Ninth Circuit. For example, in the current case, the defendant stated, in response to a question from the

8

Court about his understanding of the charges against him: "Well, before I can give you an answer, the most important issue is missing here. The Court has not established the jurisdiction as Federal Rules of Civil Procedure 12(b)(1) says." [Doc. No. 19, *Faretta* Hearing Tr., at p. 18, June 1, 2017]. Later in the hearing, the defendant again questioned the court's jurisdiction: "But first thing, according to the Supreme Court decisions and also the Federal Rules of Civil Procedure that I mentioned before, 12(b)(1), is that the Court needs to establish immediately whether the Court has jurisdiction or whether the Court doesn't have jurisdiction." *Id.* at 28. He then asked this Court to clarify what rules apply in court. When he was told again that the Federal Rules of Criminal Procedure, not Civil Procedure, were applicable, he asked, "So are you telling me that I am in military court?" *Id.*

In the present case, the defendant has persisted in his demand to advance his own defense. [Doc. No. 19, *Faretta* Hearing Tr., at pp. 19, 21, 29]. As discussed above, the standard for competency to stand trial is more lenient than the standard for competency to represent oneself under *Edwards*. As such, defendant's admissions to the Ninth Circuit that he is not competent to stand trial necessarily precludes the possibility that the defendant is capable of conducting his own defense at the trial in this action.

The defendant's own admission to the Ninth Circuit Court of Appeals about his "bizarre conduct" is illustrative of his inability to represent himself and underscores his inability under *Edwards* to represent himself in proceedings before this Court:

- "The government's characterization of defendant as having 'actively participated in trial preparation' because he filed motions and discussed witnesses, whether he wanted a jury trial, and what he would wear to court masks the underlying reality. Defendant's filings were largely incomprehensible and made no remotely viable legal arguments. His interactions with the court regarding his right to a jury trial, trial witnesses, and what he would wear during trial, were similarly perplexing. What's more, even at sentencing, defendant continued to push his bizarre "defense" and essentially did nothing to advocate for himself-something this Court found particularly disturbing in *Ferguson*. This is not the case of a 'fully competent, albeit foolish' defendant. The record shows that defendant was not competent, as defined

9

in *Edwards*, to represent himself, and the district court erred in allowing him to do so." [Reply, at p. *7 (internal citations omitted)].

- "The facts and circumstances in *Ferguson*[6] – so similar to those present here–led the Court to conclude that . . . '[d]efendant's complete failure to defend himself seriously jeopardized the fairness of the trial and sentencing hearing and, at the very least, seriously jeopardized the appearance of fairness.' Accordingly, the Court returned the case to the district court for it to further consider whether defendant had been competent to represent himself. The same should be done here." [Opng. Brief, at p. 31-32 (internal citations omitted)].

- "As discussed in the opening brief, defendant's so-called 'UCC defense' - whatever it was - was not just a stretch, it was incomprehensible and without any basis in law. [Opng. Brief at 24.] That the BOP likened defendant to a tax protestor because of his apparent anti-government sentiment does not change the critical fact that his UCC defense was utterly untenable. In light of that, the BOP's conclusion that defendant's conduct was goal-oriented makes little sense. How could defendant's conduct be goal-directed when there was not even the slightest hope he could achieve any benefit from it?" [Reply, at p. *1-2].

Heeding defendant's own advice, this Court views defendant's "incomprehensible" and perplexing legal arguments at the initial stages of this proceeding as evidence of his inability to conduct his own defense. Applying *Edwards*, the Court concludes that the defendant is not capable of conducting the basic tasks necessary to mount an effective defense at trial, and therefore concludes that he requires the assistance of counsel to represent him. *Edwards*, 554 U.S. at 173 (differentiating between a "defendant's ability to proceed on his own to enter a guilty plea . . . and the defendant's ability to conduct trial proceedings").

## IV. Conclusion

Upon consideration of defendant's behavior during the defendant's initial appearance on May 1, 2017, arraignment on indictment on May 11, 2017, *Faretta* and

---

[6] The defendant in *Ferguson* similarly exhibited "bizarre behavior." For example, the defendant commented, "I fully accept the charges for value," and referred to the UCC as "a defense to his actions." *United States v. Ferguson*, 560 F.3d 1060, 1062 (9th Cir. 2009).

status hearing on June 1, 2017, and status hearing on August 22, 2017, and review of the governing legal standard, and the defendant's prior admissions before the Ninth Circuit that he lacks the capacity to represent himself, this Court concludes that defendant is incapable of self-representation. Accordingly, defendant's requests for waiver of counsel and self-representation are **DENIED**.

**IT IS SO ORDERED**.

Dated: September 1, 2017

Hon. Karen S. Crawford
United States Magistrate Judge